JAMES E. BELL AND LINDA F. BELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; WAYNE H. HACKER AND SANDRA K. HACKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bell v. Commissioner
Docket Nos. 1196-88; 1325-88[1]
United States Tax Court
T.C. Memo 1990-171; 1990 Tax Ct. Memo LEXIS 197; 59 T.C.M. (CCH) 286; T.C.M. (RIA) 90171; March 29, 1990
Paul H. Durham, for the petitioners. Juandell D. Glass, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, in separate statutory notices of deficiency, determined deficiencies in petitioners' income tax and additions to tax, as follows: James E. and Linda F. Bell - Docket No. 1196-88:
Additions to Tax - I.R.C. Sections
Year
Deficiency
6653(b)(1) [2]
6653(b)(2)
6661
1981
$ 14,304.24
$ 7,152.12
NA
none
1982
5,614.00
2,807.00
*
$ 1,404.00
1983
582.00
none
none
none
*198 Wayne H. and Sandra K. Hacker - Docket No. 1325-88:
Additions to Tax - I.R.C. Sections
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661
1981
$ 10,434.56
$ 5,217.28
NA
none
1982
6,716.00
3,358.00
*
$ 1,679.00
1983
2,359.50
none
none
none
The parties in their stipulation of facts agreed "that the sole issue remaining for resolution [in both cases] is whether the petitioners in the operation of their partnership, J & L Winding, incurred deductible business expenses in the form of labor payments during the taxable years 1981 and 1982, and, if so, the amounts in each year." One exception to the "sole issue" stipulated for trial concerns the potential for automatic mathematical adjustments to the Bells' and Hackers' medical and dental expenses for the 1982 taxable year. The other adjustments contained in the *199 notices of deficiency were agreed to by the parties in the stipulation of facts, but no specific reference [3] was made to the additions to tax. Petitioners on brief, however, argued that respondent had erred in determining additions to tax under sections 6653(b) and 6661. For reasons explained in our opinion, petitioners will be held to their agreement conceding all issues other than the one concerning the labor expenses. *200 FINDINGS OF FACT Petitioners James E. and Linda F. Bell (petitioners Bell), at all times pertinent to this case were married and their legal residence was Dewey, Oklahoma. Petitioners Wayne H. and Sandra K. Hacker (petitioners Hacker) at all times pertinent to this case were married and their legal residence was Dewey, Oklahoma. Petitioners Bell and petitioners Hacker, during the years in issue, used the cash method of reporting income and deductions for Federal tax purposes. Petitioners James E. Bell (Bell) and Wayne H. Hacker (Hacker), during the years 1981, 1982, and 1983, operated a partnership known as "J & L Winding" (J & L) which engaged in the business of rewinding electric motors. Bell and Hacker shared income and deductions equally. J & L, for Federal tax purposes, used the cash method of reporting income and deductions. During the years under consideration, all rewinding was performed for Standard Pumps, Inc. (Standard). No Federal partnership return was filed for J & L for the taxable years 1981 and 1982. A 1983 Federal partnership return was filed for J & L. During part of 1981, Hacker was an employee of Standard as an assemblyman. Prior to December 1981, *201 Hacker ceased employment with Standard. Sometime during December 1981, Hacker and Bell began an automobile gasoline and service station named "Dewey Texaco." Dewey Texaco was operated by Hacker and Bell. Hacker worked full time at Dewey Texaco and Bell generally worked after his regular working hours with Standard. Hacker and Bell were partners in the Dewey Texaco venture, but Hacker was to run the business. Bell was employed as a shop foreman at Standard during the period under consideration. Initially, J & L's business was located at a garage or carport adjacent to Bell's residence. Only a limited amount of rewinding was performed on J & L's business premises during 1981 and 1982. Subcontractors did much of the rewinding at their own homes or locations. J & L was formed for the purpose of assuming, on a contract basis, the function of winding motors for Standard. Standard, for reasons not contained in the record, laid off its employees who had been winding motors. During 1981, while Hacker was still employed with Standard, he picked up and dropped off motors at Standard. After Hacker began operating Dewey Texaco, Harold Collier and Jim Edens began picking up motors for *202 rewinding from Standard. Collier and Edens were former employees of Standard who, during 1981 and 1982, rewound motors on a subcontract basis for J & L. During this period, five or six other former employees of Standard rewound motors on a subcontract basis with J & L. Generally, Hacker would return rewound motors to Standard. Standard paid J & L on a periodic basis for each rewound motor. Upon payment, Hacker would generally cash Standard's check and make cash payment to Collier, Edens, and other subcontractors. Although there were other subcontractors, Collier and Edens did the majority of the subcontracting with J & L. J & L's 1983 Federal partnership return reflected $ 154,598 in gross receipts from the rewinding of motors and an $ 18,720 cost of goods sold, for a gross profit of $ 135,878. For 1983, $ 70,057 was reflected as "Salaries and wages (other than to partners)." The ordinary income, after considering other deductions and a small amount of capital gain income, was $ 55,491. Of that amount, $ 14,428 was attributable to Bell and $ 41,063 was attributable to Hacker. The percentage of salaries (other than to partners) to gross receipts was about 45 percent for 1983. *203 Prior to their involvement with Dewey Texaco and J & L Winding, Hacker and Bell did not have experience operating their own businesses. No records were maintained for the business activities of J & L for 1981 and 1982. For 1981 and 1982 neither petitioners Hacker nor petitioners Bell reported any amount of income from J & L's rewinding activity. Based upon payments from Standard to J & L during 1981 and 1982, respondent determined that each set of petitioners had $ 35,247 ($ 70,494 total) and $ 18,505 [4] ($ 37,008 total) of income from the J & L Winding partnership. No deductions were allowed in respondent's above determinations of income from J & L. For purposes of trial, respondent agreed that J & L was entitled to expenses totaling $ 3,479.27 for 1981 and $ 728.01 for 1982. Of the $ 3,479.27 agreed to for 1981, $ 2,806.00 was attributable to subcontractors other than Collier and Edens. No amount was determined or agreed as attributable to subcontractors for the taxable year 1982. *204 Collier and Edens regularly picked up from 20 to 40 motors each per week from Standard for rewinding. Hacker and Bell did not personally have sufficient time to rewind the number of motors for which Standard made payment to J & L for 1981 and 1982. In addition to the $ 2,806.00 in payments that respondent agrees were made to subcontractors for rewinding during 1981, J & L paid $ 28,916.30 and $ 16,653.60 to subcontractors for rewinding of Standard's motors for 1981 and 1982, respectively. OPINION Preliminary to considering the question of the amount of labor payments made by J & L for 1981 and 1982, we must consider whether petitioners conceded the correctness of respondent's determination of additions to tax under sections 6653(b) and 6661. First we consider the section 6661 addition to tax which has been determined by respondent with respect to both sets of petitioners' 1982 taxable year. That section is applicable if "there is a substantial understatement of income tax." A "substantial understatement" (for an individual) exists if the understatement exceeds the greater of the excess of 10 percent of the tax required to be shown on the return or a $ 5,000 understatement. *205 In the setting of this case for the 1982 taxable year, petitioners failed to report any amount of income from J & L Winding. After considering all of the facts in this record, each set of petitioners will have an understatement for 1982 in excess of $ 5,000. Accordingly, even if we were to find that section 6661 is still in issue, the provisions of that section would apply to both sets of petitioners for their 1982 taxable years. With respect to the addition to tax under section 6653(b), petitioners stipulated "that the sole issue remaining for resolution [in both cases] is whether the petitioners in the operation of their partnership, J & L Winding, incurred deductible business expenses in the form of labor payments during the taxable years 1981 and 1982, and, if so, the amounts in each year." No specific mention of the additions to tax was present in the stipulation of facts entered into between the parties. Respondent did not make any findings or present any argument on brief concerning the section 6653(b) addition to tax. Respondent, who would otherwise bear the burden of proof with respect to the addition to tax for fraud, [5] believed that petitioners had conceded that issue *206 under the terms of the stipulation. Petitioners, on the other hand, expended most of their briefs on the issue that the parties stipulated was the sole issue for resolution. Petitioners' brief included a relatively limited reference to the additions to tax. In their opening brief, which was 18 pages long, petitioners addressed sections 6653(b), as follows: Respondent has imposed civil fraud penalties, under Section 6653(b)(1)&(2). Ignorance of tax law and failing to keep records is not fraud, which it takes to trigger these additions to tax. Petitioner's [sic] were naive, they were careless, they were unsophisticated in business and taxwise, they were uneducated but they did not fail to file partnership returns or pay tax because of a fraudulent intent. It never dawned on them that the checks they received from Standard Pump Co. was all income and they had to keep records of who and how much they paid out. They thought of themselves as a coordinator and vehicle for Standard Pump Co., to pay these independent contractors for doing the work. Respondent has just not shown fraud, sufficiently to merit imposing these additions. *207 Respondent did not address the addition to tax on brief and petitioners did not advance any argument concerning the additions to tax under section 6653(b) in their reply brief. This situation is different from those where an issue is in controversy and one of the parties fails to address that issue on brief. In those situations, we have held that the failure to address the issue on brief is tantamount to a concession of the issue. See, for example, Theodore v. Commissioner, 38 T.C. 1011, 1041 (1962); Miami Valley Coated Paper Co. v. Commissioner, 28 T.C. 492, 497 (1957). In this case petitioners, albeit somewhat faintly, have argued that respondent failed to carry his burden on an issue that respondent has treated as conceded or settled. In order to give proper perspective to petitioners' argument regarding section 6653(b) on brief, we must consider the circumstances leading up to the offering of that argument. Petitioners' trial memorandum, filed at the calendar on February 13, 1989, listed the issues in controversy as follows: ISSUES: 1. Did petitioners incur business expenses in their operation of J & L Winding? 2. Are they *208 entitled to deduct these business expenses? The parties are resolving other issues. Under the category "BRIEF SYNOPSIS OF LEGAL AUTHORITIES:" petitioners included the following statement: Sec. 162 of the IRC allows payments made to subcontractors as deductible business expenses. This fact is so well settled in the tax law that it should not merit a full discussion in this memo. The only question outstanding is a factual one, i.e., were such payments made. Petitioners will show that they were paid. Additions to the tax imposed under Sections 6653(b)(1) & (2) and 6661 should be reduced commensurate with this. [Emphasis supplied.] Likewise, respondent's trial memorandum, filed on the same date as petitioners', only referenced the business expense issue concerning J & L. The parties in their opening statement at the trial only referenced the business expense issue and did not, in any manner, reference or discuss the additions to tax. It was also apparent to the Court that respondent thought petitioners had conceded the additions to tax because respondent did not come forward with evidence, as he normally would, regarding section 6653(b). *209 Petitioners were called upon to go forward with their case in chief with respect to the only issue presented to the Court. Accordingly, it was a surprise to the Court and respondent when petitioner, on brief, argued as though section 6653(b) was at issue. Under these circumstances and considering the composite presented by the facts of this case we hold that petitioners conceded the issue concerning the additions to tax under sections 6653(b) in their stipulation and that their attempt to resurrect that issue on brief was both untimely and inappropriate. Petitioners have not asked us to permit the modification of their stipulation with respondent or to be otherwise relieved from that stipulation. See, for example, C. F. Malanka & Sons, Inc. v. Commissioner, T.C. Memo. 1979-187; Strasser v. Commissioner, T.C. Memo. 1986-579, affd. without published opinion 838 F.2d 1203 (2d Cir. 1987). Their attempt to raise this issue on brief would result in prejudice to respondent, who obviously believed that the issue upon which he would have had the burden of proof had been conceded or settled. We find that petitioners have conceded the additions *210 to tax for their taxable years 1981 and 1982. The remaining issue to be considered, and the only one presented by the parties at trial, is a purely factual one. We must decide the amount of subcontracted labor that is deductible by J & L and petitioners for 1981 and 1982. Because petitioners did not report any income from J & L on their 1981 and 1982 Federal income tax returns, respondent determined that all amounts paid to petitioners by Standard for rewinding motors were income to them. For purposes of trial, the parties stipulated that petitioners were entitled to some expenses or deductions in connection with their income from rewinding motors during 1981 and 1982. Respondent, however, only agreed to a $ 2,806 deduction for subcontracted labor for 1981 and no amount for 1982. Petitioners filed a Federal partnership return for J & L's 1983 taxable year in which they reported $ 154,598 in gross receipts from the rewinding of motors, and $ 70,057 was deducted for salaries (subcontracted labor) to individuals other than petitioners. The 1983 taxable year of both sets of petitioners was a subject of the statutory notices of deficiency which are a subject of this case. The *211 parties, however, have resolved all issues concerning 1983 and, although evidence is before us concerning 1983, we are not called upon to decide any issues for that taxable year. It is noted, however, that respondent did not make any adjustment with respect to the $ 70,057 claimed as salaries in connection with J & L's 1983 motor winding activity. Petitioners bear the burden of proof on this issue. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Respondent determined, and petitioners do not disagree, that J & L received $ 70,494 and $ 37,008 from Standard for rewinding motors during 1981 and 1982, respectively. Petitioners argue on brief and testified at trial that they paid out at least [6] $ 50,922 and $ 25,680 for subcontracted labor for 1981 and 1982, respectively. Petitioners had attempted to obtain affidavits from various former Standard employees who performed the subcontract labor during 1981 and 1982. They were not successful in locating all such persons and encountered difficulties [7] with respect to others. A few of the affidavits were stipulated to by respondent and form the basis for respondent's agreement to $ 2,806 in subcontracted labor *212 as deductible for 1981. It is clear that petitioners were engaged in the business of rewinding motors. It is also clear from this record that petitioners were actively engaged, during 1981 and 1982, in pursuing full-time employment or business activity, other than the rewinding activity of J & L. There is substantial testimony linking several subcontract *213 laborers to the J & L rewinding business, especially Collier and Edens, each of whom regularly picked up between 20 and 40 motors per week for rewinding. Finally, petitioners kept no contemporaneous records of the J & L activity during 1981 and 1982, but they have adequately shown, by a preponderance of the evidence, that they did incur subcontract labor expenses in excess of the amount agreed to by respondent. Petitioners claim, for 1981 and 1982, amounts for subcontracted labor which approximate 72 percent and 69 percent of gross receipts, respectively. Petitioners kept records for 1983 and claimed subcontract labor expenses approximating 45 percent of their gross receipts from rewinding motors. Considering the potential for inaccuracy based upon this record, but being convinced that petitioners did incur subcontract labor expenses, we hold that petitioners are entitled to deduct for 1981 and 1982 subcontract labor expenses in the amounts of $ 28,916.30 [8] and $ 16,653.60, respectively. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). These amounts are arrived at by use of a 45-percent ratio in relation to gross receipts from rewinding and based upon J & L's *214 actual and undisputed experience. To reflect the foregoing, Decisions will be entered under Rule 155 in both dockets. Footnotes
1. These cases have been consolidated for purposes of trial, briefing, and opinion.↩
2. Section references are to the Internal Revenue Code, as amended and in effect for the periods in issue. Rule references are to this Court's Rules of Practice and Procedure. Plus 50 percent of the interest on any deficiency redetermined.
*↩ Plus 50 percent of the interest on any deficiency redetermined.
3. The operative paragraphs of the stipulation of facts, containing the concessions, are as follows: 12. Petitioners James and Linda Bell concede the statutory notice of deficiency adjustments for each of the years 1981, 1982 and 1983, with the exception of Adjustment 7 for 1982 for Medical & Dental expense which will be an automatic adjustment. 13. Petitioners Wayne and Sandra Hacker concede the adjustments set forth in the statutory notice of deficiency for the taxable years 1981, 1982 and 1983, with the exception of Adjustment G-Medical & Dental expenses for 1982 which will be an automatic adjustment. 14. The respondent concedes that J & L Winding Partnership incurred deductible business expenses during the taxable years 1981 and 1982 in the total amounts of $ 5,610.27 and $ 728.01, respectively, consisting of the following expenses * * *. 15. The parties are in agreement that the sole issue remaining for resolution by the Court is whether the petitioners in the operation of their partnership, J & L Winding, incurred deductible business expenses in the form of labor payments during the taxable years 1981 and 1982, and, if so, the amounts in each year.↩
4. Respondent used $ 18,505 on petitioners/Hacker's notice of deficiency and $ 18,503 on petitioners/Bell's notice of deficiency. The $ 2 difference has not been explained in the record.↩
5. See secs. 6653(b) and 7454(a); Rule 142(b).↩
6. The two main subcontractors were Harold Collier and Jim Edens. The amount attributable to them varied widely in testimony, and petitioners appeared to argue on brief for an amount between the low and high figure. We note that petitioners utilized a figure closer to the high end of the amounts. ↩
7. With respect to Mr. Edens, petitioners testified that he originally signed an affidavit stating that he received about $ 31,000 from petitioners for contract labor. Petitioners testified further that after consulting with advisers, Mr. Edens was only willing to sign an affidavit stating that he had received about $ 2,000 each year from petitioners, the amount that Mr. Edens had reported as income on his income tax return. Although these affidavits were offered into evidence, they were not received and Mr. Edens did not testify.↩
8. An adjustment has been made in 1981 for the $ 2,806 agreed to by respondent.↩